# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 08-02283-TLM |
| BOBBIE A. OWEN & ) | |
| MICHAELE OWEN, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| JEREMY J. GUGINO, TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 09-06015-TLM |
| ) | |
| WACHOVIA DEALER SERVICES, ) | |
| INC., a California Corporation, ) | |
| FKA, WFS Financial, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION

### INTRODUCTION

     This preference avoidance action involves a security interest in a motor vehicle. That security interest was perfected in California. However, the debtors relocated themselves and the vehicle to Idaho. The vehicle was then titled in Idaho

MEMORANDUM OF DECISION - 1

and, exactly 90 days later, the debtors filed for bankruptcy relief. Because of the manner in which the perfection of the security interest in Idaho took place, the chapter 7 trustee asserts a preferential transfer occurred.

This action presents an issue of statutory interpretation, and does so upon facts that the creditor's counsel lamented as "reverse serendipity." Though those facts required the creditor to defend its interest, the Court finds no preference has been established.

## PROCEDURAL BACKGROUND

Chapter 7 trustee Jeremy Gugino ("Trustee") filed this adversary proceeding to avoid under § 547 the security interest asserted by Wachovia Dealer Services, Inc. ("Defendant") in a 2007 Mercury Marquis (the "Mercury") owned by Bobbie and Michaele Owen ("Debtors").[1] Defendant answered, and the matter was set for trial on May 26, 2009.

The parties submitted briefs. *See* Doc. Nos. 13, 17, 18. They also filed a stipulation as to the facts for the purpose of this matter. Doc. No. 14. When trial commenced, they further stipulated to the admission of exhibits 100 and 201-214. The trial on May 26, 2009, consisted of the parties' legal arguments on this agreed factual record.

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

MEMORANDUM OF DECISION - 2

Having considered the facts as stipulated, and the parties' oral arguments and briefs, and following an evaluation of applicable authorities, the Court determines that Defendant prevails.[2]

**FACTS**

Pursuant to the agreement and stipulation of the parties, and in light of the documents admitted into evidence, the facts are these.

On December 10, 2007, Debtors entered into an agreement with Defendant so they could purchase the Mercury. Under that agreement, Defendant agreed to finance a portion of the purchase price, and Debtors agreed to give Defendant a security interest in the Mercury to secure that obligation. Debtors took possession of the Mercury that same day. The parties agree that, for the purposes of Article 9 of the Uniform Commercial Code, the agreement adequately described the collateral, and the security interest attached that day.

Also on December 10, Defendant applied for a California certificate of title for the Mercury showing Debtors as the owners and Defendant as the lienholder. An electronic California title was issued noting the same. The parties agree that, under applicable California law, Defendant perfected its security interest in the Mercury on December 10, 2007.

---

[2] This Decision constitutes the Court's factual findings and legal conclusions. Fed. R. Bankr. P. 7052.

MEMORANDUM OF DECISION - 3

In May 2008, Debtors moved to Idaho, bringing the Mercury with them.

On June 26, 2008, the Department of Motor Vehicles ("DMV") in Ada County, Idaho, sent Defendant a letter, Ex. 211, stating that Debtors had filed an application to register and title the Mercury in Idaho and that this application listed Defendant as a lienholder. The letter requested that Defendant submit a "paper" out-of-state certificate of title.[3] It further stated: "*If your lien is still active, it will be recorded on the Idaho title, which will in turn be mailed to you after issuance.*"

A paper California certificate of title was thereafter issued. *See* Ex. 212. It showed Debtors as owners of the Mercury, and it noted Defendant's lien. This paper California title had an "odometer date" of December 10, 2007 and an "issue date" of July 16, 2008. It contained no other date speaking to when Defendant's lien was perfected. However, the parties answered that question at trial by agreeing that the perfection date of the lien under California law was December 10, 2007.

The parties stipulated that sometime between July 16 and July 30, an application was made for an Idaho title for the Mercury. Doc. No. 14 at 2.[4] The

---

[3] The letter to Defendant explained that Idaho "requires that the out-of-state certificate of title be surrendered before titling and registration can be completed." It then instructed: "If you have an electronic lien, please request a paper title for your state so that we may assist your customer. Please submit the title and a photocopy of this letter to the address shown below."

[4] The letter, Ex. 211, indicates on its face that Debtors had applied to title and register the Mercury, and that letter was dated June 27, a date some weeks before the late July time frame in the parties' stipulation. The Court therefore interprets this reference to the July 16-30 time

(continued...)

MEMORANDUM OF DECISION - 4

Idaho title issued as a result of this application is dated August 6, 2008. *See* Ex. 208.[5] It shows Debtors as owners and Defendant as lienholder. The Idaho title shows the "record" date for Defendant's lien as July 16, 2008 – a date consistent with the "issue date" on the paper California title.

On October 14, 2008, Debtors filed their voluntary chapter 7 petition for relief. The parties stipulated that the petition date is exactly 90 days after July 16.

On these facts, Trustee alleges that Defendant perfected its lien pursuant to Idaho law on July 16, 2008. Thus, he asserts, this is a transfer avoidable as a preference, and that he can recover the vehicle or its value.[6]

Defendant counters that its security interest was perfected on December 10, 2007 under California law and remained perfected as of the bankruptcy filing, thus resulting in no avoidable transfer. Defendant further contends that, if there was a

---

[4](...continued)
frame as reflecting the date when other materials were submitted to DMV, or other acts taken, to accomplish the titling and registration. *See*, *e.g.*, Ex. 209 (a form of application for certificate of title, with *inter alia* a July 30, 2008 odometer reading date and what appears to be the signature of Debtor Bobbie Owen); *see also* Ex. 210 (a VIN inspection certificate, also dated July 30, 2008). Given that the letter, Ex. 211, was addressed to Defendant, and asked Defendant to submit the California title, the Court assumes that Defendant provided the title, Ex. 212, to the DMV as instructed.

[5] To be fully accurate, Ex. 208 is not a copy of the actual certificate of title. Rather it is a response of the Idaho Transportation Department to the inquiry of Trustee, and reflects the data from the Idaho certificate of title. The parties treat it as equivalent to, and as accurately reflecting the information on, the title. So does the Court.

[6] During the case, the parties stipulated to stay relief, and the Mercury was sold at auction for net proceeds of $7,463.25. That amount is being held pending resolution of this litigation.

MEMORANDUM OF DECISION - 5

July 16, 2008, transfer, Trustee has failed to prove all of the other elements of § 547(b). Finally, if Trustee has met his burdens under § 547(b), Defendant argues its security interest is not avoidable given the "enabling loan" exception of § 547(c)(3).

**DISCUSSION AND DISPOSITION**

### A. Burdens and elements of a preference avoidance action

> In order to avoid a transfer as a preference under the Code, the trustee must prove by a preponderance of the evidence that a transfer of property of the debtor occurred and that such transfer (1) was made to or for the benefit of the creditor; (2) for or on account of an antecedent debt; (3) while the debtor was insolvent, (4) within 90 days before the date of filing of the petition; and (5) enabled the creditor to receive more than it would have received in a chapter 7 liquidation if the transfer had not been made.

*Elsaesser v. Cent. Pre-Mix Concrete Co. (In re Pioneer Constr., Inc.)*, 01.2 I.B.C.R. 66, 67 (Bankr. D. Idaho 2001) (citing *Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1073 (9th Cir. 2000); and *Hymas v. Am. Gen. Fin., Inc. (In re Chase)*, 00.2 I.B.C.R. 73, 76 (Bankr. D. Idaho 2000)). The trustee must prove each element of § 547(b) by a preponderance of the evidence. *Hopkins v. Lang (In re Carpenter)*, 378 B.R. 274, 278, 07.4 I.B.C.R. 76, 77 (Bankr. D. Idaho 2007). Once the trustee meets his burden, the defendant has the burden of proving an exception under § 547(c) as an affirmative defense. *Id*.

As a threshold matter, Trustee must prove in this case that a transfer was made on July 16, 2008. Trustee concedes that if the transfer, for § 547 purposes,

MEMORANDUM OF DECISION - 6

occurred prior to this date, it would fall beyond the 90-day period and is not avoidable as a preference.

### 1. The element of a "transfer"

*Crawforth v. Treasure Valley Federal Credit Union (In re Tuttle)*, 03.3 I.B.C.R. 192, 2003 WL 22221330 (Bankr. D. Idaho Aug. 21, 2003), recognized that what constitutes a transfer for bankruptcy purposes is a matter of federal law. *Id.* at 193 (citing *Fitzgerald v. First Sec. Bank (In re Walker)*, 77 F.3d 322, 323 (9th Cir. 1996)). The federal definition of a "transfer" is broad, and includes the creation of a lien. *Id.* (citing § 101(54)).

*Walker* further establishes that § 547(e) specifies the time when a transfer is deemed made for purposes of analyzing the existence of a preference. 77 F.3d at 323. Sections 547(e)(2) and (e)(3) provide:

> (2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made –
> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);
> (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days; or
> (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of –
> (i) the commencement of the case; or
> (ii) 10 days after such transfer takes effect between the transferor and the transferee.
>
> (3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

MEMORANDUM OF DECISION - 7

This Court stated in *Fitzgerald v. First Security Bank (In re Walker)*, 161 B.R. 484, 93 I.B.C.R. 273 (Bankr. D. Idaho 1993), *aff'd*, 178 B.R. 497 (D. Idaho 1994), *aff'd*, 77 F.3d 322 (9th Cir. 1996) that "[w]hile the language of these provisions is complex, simply stated the statutes dictate that a transfer is deemed made at the time it takes effect between the parties *if* it is perfected within ten days thereafter [or] [i]f it is not perfected within ten days, the transfer is deemed to have occurred when it is perfected." 161 B.R. at 487-88.[7]

Perfection means the time "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." § 547(e)(1)(B).[8]

### 2.    Idaho law controls perfection in this case

The perfection of a security interest is governed by state law. *See Elliott v. Frontier Props. (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1420 (9th Cir.

---

[7] *Walker* was decided prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (2005), which extended the 10-day period to a 30-day period. The extension of the period is immaterial to the present case.

[8] A treatise notes:

> Perfection . . . earns the secured creditor priority over a subsequent lien creditor. The lien creditor *par excellence* is the trustee in bankruptcy, wielding rights under section 544(a) of the Bankruptcy Code. Thus a secured creditor who perfects prior to bankruptcy usually enjoys a solitary feast, but an unperfected secured party will invariably have to eat from the general creditors' trough in bankruptcy.

*See* 4 White & Summers, Uniform Commercial Code (5th ed.) at § 31-4. The proposition applies to the secured creditor who perfects during the § 547 preference period (but outside the § 547(e)(2)(C)(ii) grace period) as well as to the secured creditor who fails to perfect at all.

MEMORANDUM OF DECISION - 8

1985); *cf. Butner v. United States*, 440 U.S. 48, 55 (1979) (stating that "[p]roperty interests are created and defined by state law.").

Idaho Code § 28-9-303 addresses the perfection and priority of security interests in goods covered by a certificate of title, and it states:

> (a) This section applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor.
>
> (b) Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.
>
> (c) The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.

Idaho Code § 28-9-303.[9] These principles regarding change in controlling law are illustrated by an example:

> Debtor's automobile is covered by a certificate of title issued by Illinois. Lender perfects a security interest in the automobile by complying with Illinois' certificate-of-title statute. Thereafter, Debtor applies for a certificate of title in Indiana. . . . *Under Section 9-303, Illinois law ceases to govern perfection; rather, once Debtor delivers*

---

[9] This provision reflects Idaho's adoption of § 9-303 of Revised Article 9 of the Uniform Commercial Code ("UCC"). *See* 2001 Idaho Sess. L. ch. 208. California has adopted those revisions, too. *See* Cal. Com. Code § 9303.

MEMORANDUM OF DECISION - 9

> *the application and applicable fee to the appropriate Indiana authority, Indiana law governs.*

*See* Idaho Code § 28-9-316, Official Comment 5, at example 8 (emphasis supplied).[10]

Though there is no Idaho case law construing this provision, in interpreting other states' versions of § 9-303 of Revised Article 9, courts have determined that a certificate of title on a vehicle issued by a foreign state ceases to control the issue of perfection of a security interest once application is made in the forum state for a new certificate of title. At that time, the law of the second jurisdiction governs perfection of a lien in the vehicle. For example, in *In re Cook*, 2007 WL 680170, at *2 (Bankr. W.D.Mo. Mar. 1, 2007), the court held:

> When the Debtor bought the [car], it was "covered" by the Illinois Certificate of Title. However, under § 9-303(b), when the Missouri Department of Revenue issued its Certificate of Title on May 16, 2005, the [car] ceased to be covered by the Illinois Certificate of Title and became covered by the Missouri Certificate of Title. At that point, Missouri law became the local law of the jurisdiction under whose certificate of title the [car] was covered and, under § 9-303(c), Missouri law governs perfection of liens on it.

*Id.*[11] *See also Metzger v. Americredit Fin. Servs., Inc.*, 615 S.E.2d 120, 124-25 (Ga. Ct. App. 2005) (stating that pursuant to Georgia's version of Revised UCC

---

[10] UCC § 9-316 and the rest of this Comment will be addressed further below.

[11] While *Cook* addressed a motion for reconsideration of the court's denial of stay relief in favor of the creditor, and did not discuss preferences but instead relied on § 544(a)(1), its discussion of the relevant provisions of the UCC is relevant and instructive.

MEMORANDUM OF DECISION - 10

§ 9-303, "even when a security interest in goods has been perfected in another state, Georgia law determines perfection and priority issues once the goods become 'covered' by a Georgia certificate of title, which occurs when a valid application and fee are submitted to the Georgia DMV.")

Here, at the time Debtors moved to Idaho, the Mercury was subject to a perfected security interest in favor of Defendant under California law. That lien interest and its effective date of December 10, 2007, were reflected on the electronic California title, and the parties agree Defendant was perfected under California law.

However, between July 16 and July 30, Debtors applied for an Idaho certificate of title. This is significant. Under Idaho Code § 28-9-303(b), goods "cease to be covered" by a certificate of title "*at the earlier of*" (1) the time the certificate of title ceases to be effective under the law of the issuing jurisdiction [*i.e.*, California], *or* (2) "*the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.*" The statute further establishes that the "[g]oods become covered" in that second jurisdiction [*i.e.*, Idaho] "when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority." *Id.*

Under these provisions, the Mercury ceased to be covered by the California certificate of title, and became covered by the Idaho certificate of title laws, on or

MEMORANDUM OF DECISION - 11

about July 30, 2008, when the application and fees were tendered to the Idaho authorities. *See* Ex. 209. The Court must therefore look to Idaho law to address the question of Defendant's perfection of its security interest. *See* Revised UCC § 9-303(c); Idaho Code § 28-9-303(c) ("The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection [and] the effect of perfection or nonperfection . . . from the time the goods become covered by the certificate of title until the goods cease to be covered[.]")

### 3. The lien's perfection in California remained effective

The parties do not disagree with a fundamental proposition of Idaho law governing perfection of liens in motor vehicles found in Idaho Code § 49-510(3), which states:

> The filing of a lien or encumbrance and the notation of it shall be a condition of perfection and shall constitute constructive notice of the lien or encumbrance and its contents to creditors and subsequent purchasers and encumbrancers. *All liens or encumbrances so filed with the department shall be perfected and take priority according to the order in which the same are noted upon the certificate of title or entered into the electronic records of the department.*

(Emphasis supplied).

In applying this statute, this Court has stated that "a security interest is deemed perfected according to the date noted by the State [of Idaho] on the title certificate." *Walker*, 161 B.R. at 491. This is true even if the lien date on the Idaho title was recorded by administrative error. *See In re White*, 08.3 I.B.C.R.

MEMORANDUM OF DECISION - 12

134, 136-37 (Bankr. D. Idaho 2008); *Fitzgerald v. First Sec. Bank of Idaho (In re Carson)*, 97.1 I.B.C.R. 8, 10 (Bankr. D. Idaho 1997).

Trustee emphasizes that Defendant's lien date as shown on the Idaho certificate of title is July 16, 2008. Ex. 208. He argues that whether the Idaho authorities erroneously listed this date based upon the July 16, 2008 "issue date" on the paper California certificate of title is not relevant to deciding the perfection issue. *White*, 08.3 I.B.C.R. at 136-37.

Therefore, Trustee concludes, Defendant perfected its security interest in the Mercury under Idaho law on July 16, 2008. He contends that this provides the initial date required under § 547(e)(1)(B) (providing that transfer of property other than real property is perfected when creditor on simple contract cannot acquire a judicial lien superior to the interest of the transferee). Then, because this date is more than 30 days after the transfer took effect between the transferor and the transferee (*i.e.*, the grant of the security interest by Debtors to Defendant in December, 2007), he contends that the transfer was made for preferences purposes on the date of perfection, July 16, 2008. *See* § 547(e)(2)(B).

While the Court does not disagree with these authorities or the general analysis, Trustee's argument overlooks another provision of Idaho statutory law. Defendant contends – correctly – that its lien, perfected in December, 2007, under California law, remained perfected as of the October 14, 2008 bankruptcy filing

MEMORANDUM OF DECISION - 13

pursuant to Idaho Code § 28-9-316.

### a.  Idaho Code § 28-9-316 provides for continued perfection

Idaho Code § 28-9-316 is entitled "*Continued perfection of security interest following change in governing law.*"  It provides a general rule that perfection continues until the earliest of (1) the time it would cease under the initial state's law, (2) four months after the debtor's change of location to another state, or (3) one year after transfer of the collateral to another person that becomes a debtor and is located in another state.  *See* Idaho Code § 28-9-316(a)(1)-(3).  However, security interests in goods subject to certificates of title have special provisions. The relevant subsections of Idaho Code § 28-9-316 are (d) and (e), which provide:

> (d)  Except as otherwise provided in subsection (e) of this section, a security interest in goods covered by a certificate of title which is perfected by any method under the law of another jurisdiction when the goods become covered by a certificate of title from this state remains perfected until the security interest would have become unperfected under the law of the other jurisdiction had the goods not become so covered.
>
> (e) A security interest described in subsection (d) of this section becomes unperfected as against a purchaser of the goods for value and is deemed never to have been perfected as against a purchaser of the goods for value if the applicable requirements for perfection under section 28-9-311(b) or 28-9-313 are not satisfied before the earlier of:
>
>> (1) The time the security interest would have become unperfected under the law of the other jurisdiction had the goods not become covered by a certificate of title from this state; or
>>
>> (2) The expiration of four (4) months after the goods had

MEMORANDUM OF DECISION - 14

      become so covered.

Idaho Code § 28-9-316(d), (e).[12]

Idaho Code § 28-9-316(d) provides a general rule that is key to the present dispute.[13] Reordering and restating that rule, "when the goods become covered by a certificate of title from this state [Idaho]," a previously perfected security interest in those goods "under the laws of another jurisdiction . . . remains perfected until [the time] the security interest would have become unperfected under the law of the other jurisdiction had the goods not become so covered [in Idaho]."

The Official Comments explain:

> 2. Continued Perfection. This section [9-316] deals with continued perfection of security interests that have been perfected under the law of another jurisdiction. The fact that the law of a particular jurisdiction ceases to govern perfection under Sections 9-301 through 9-307 does not necessarily mean that a security interest perfected under that law becomes unperfected. To the contrary: This section generally provides that a security interest perfected under the law of one jurisdiction remains perfected for a fixed period of time (four months or one year, depending on the circumstances), even though the jurisdiction whose law governs perfection changes. However, cessation of perfection under the law of the original jurisdiction cuts short the fixed period. The four-month and one-year periods are long enough for a secured party to discover in most cases

---

[12] These provisions of § 9-316 are complex, as are those of § 9-303. However, "Cross references and limiting language may be narrative annoyances to the reader but they do not, without more, make laws ambiguous." *In re Baker*, 430 F.3d 858, 860 (7th Cir. 2005) (addressing Revised UCC §§ 9-303 and 9-316 as enacted in Wisconsin).

[13] Idaho Code § 28-9-316(e) speaks to the interest becoming unperfected as against a purchaser of the goods for value and therefore does not apply in this case where Trustee asserts his § 547 rights. *See* § 547(e)(1)(B) (referencing perfection as against a judicial lien creditor).

MEMORANDUM OF DECISION - 15

> that the law of a different jurisdiction governs perfection and to reperfect (typically by filing) under the law of that jurisdiction. If a secured party properly reperfects a security interest before it becomes unperfected under subsection (a), then the security interest remains perfected continuously thereafter.

Idaho Code § 28-9-316, Official Comment 2. The comment to Idaho Code § 28-9-303 – the section that deals with change in the controlling law where the goods are subject to certificates of title – is consistent:

> 4. Continued perfection. The fact that the law of one State ceases to apply under subsection (b) does not mean that a security interest perfected under that law becomes unperfected automatically. In most cases, the security interest will remain perfected. See Section 9-316(d),(e).

Idaho Code § 28-9-303, Official Comment 4.[14]

Recall Official Comment 5, example 8, to Idaho Code § 28-9-316, quoted *supra*, discussing that a vehicle perfected under Illinois law would become subject to Indiana law upon application in Indiana for a certificate of title given the operation of Revised UCC § 9-303(b). The balance of the comment addresses the issue of continued perfection:

---

[14] The court in *Cook* had stated:

> Under revised Article 9, assuming [creditor] had a valid lien due to its notation on the Illinois Certificate of Title, that lien would likely have remained effective *if* no Missouri Certificate of Title had been issued. As mentioned above, however, under either Arkansas, Illinois, or Missouri's UCC § 9-303, once the Missouri Title was issued, the [car] was no longer covered by the Illinois Title.

2007 WL 680170, at *3. The Court believes this view may be mistaken, or at least incompletely articulated, because § 9-316 was also adopted in Missouri, *see* Missouri Revised Statutes § 400.9-316, and it also has the "continuity of perfection" provisions discussed in the text of this Decision.

MEMORANDUM OF DECISION - 16

> Example 8. Debtor's automobile is covered by a certificate of title issued by Illinois. Lender perfects a security interest in the automobile by complying with Illinois' certificate-of-title statute. Thereafter, Debtor applies for a certificate of title in Indiana. Six months thereafter, Creditor acquires a judicial lien on the automobile. Under Section 9-303(b), Illinois law ceases to govern perfection; rather, once Debtor delivers the application and applicable fee to the appropriate Indiana authority, Indiana law governs. *Nevertheless, under Indiana's Section 9-316(d), Lender's security interest remains perfected until it would become unperfected under Illinois law had no certificate of title been issued by Indiana. . . . If Lender's security interest remains perfected, it is senior to Creditor's judicial lien.*

Idaho Code § 28-9-316, Official Comment 5, at example 8 (emphasis supplied).[15]

Under Idaho Code § 28-9-316(d), the inquiry here is whether and when Defendant's security interest would have become unperfected under California law.[16]

---

[15] The concept of continued perfection under Revised UCC § 9-316 has also been explained as follows:

> [T]he second certificate issued by another jurisdiction will not eliminate the perfected security interest created by the first certificate of title as long as the interest continues to be perfected in the jurisdiction that issued the first certificate. As a result, the inquiry under revised Article 9 is whether the security interest was properly perfected in the issuing jurisdiction and continues to be perfected in that jurisdiction regardless of whether a second jurisdiction has issued another certificate of title.

Jane F. (Ginger) Zimmerman, *Moving Vehicles No Longer Hidden Treasure*, 24-Nov. Am. Bankr. Inst. J. 20, 48 (2005). Zimmerman concludes that Revised UCC §§ 9-303 and 9-316 have "effectively closed the door on attempts by aggressive trustees in bankruptcies to exact releases or settlements from secured creditors as some were able to do under the predecessor statutes." *Id.; see also* Hon. William Houston Brown, *The Law of Debtors and Creditors* ¶ 7:191 (stating that "[t]he gist of the . . . Revised Article 9 provision [§ 9-303] . . . is that in most cases the security interest will remain perfected.")

[16] *Accord Daneman v. AmeriCredit (In re Goncalvez)*, 291 B.R. 441 (Bankr. S.D. Ohio 2003). In that case, defendant's security interest in debtor's vehicle was subject to perfection on a New York certificate of title. The Court found that, upon move of debtor to Ohio and issuance

(continued...)

MEMORANDUM OF DECISION - 17

### b. The lien would not have become unperfected under California law

Under California law, a security interest in a motor vehicle is perfected only by compliance with the California Vehicle Code. *See* Cal. Veh. Code §§ 6300-6303. However, once perfected, California Vehicle Code § 6303 provides that "the effect of such perfection, and the creation, attachment, priority and validity of such security interest shall be governed by the Uniform Commercial Code." Cal. Veh. Code § 6303; *see also Simon v. Chrysler Credit Corp. (In re Babaeian Transp. Co.)*, 206 B.R. 536, 543 (Bankr. C.D. Cal. 1997).

California, like Idaho, has adopted Revised UCC §§ 9303 and 9316 providing for the continued perfection of goods previously titled in one state after they become covered by a certificate of title in another state. *See* Cal. Com. Code §§ 9303 and 9316; *accord* Idaho Code §§ 28-9-303 and 28-9-316 (quoted earlier). Thus, in the absence of a provision in California's Uniform Commercial Code dictating the termination of a perfected interest in a motor vehicle upon the issuance of a certificate of title in another state, the provisions of §§ 9303 and

---

[16] (...continued)
of new Ohio certificate of title, Ohio law governed perfection under Revised UCC § 9-303(c) [Ohio Revised Code § 1309.303]. However, under Revised UCC § 9-316 [O.R.C. § 1309.316], it held that "if the Defendant AmeriCredit had properly perfected its security interest under New York law, and that perfection was still in effect when the Ohio certificate of title was issued, that security interest remains perfected until it would have become unperfected under New York law." *Id.* at 444. *See also Metzger*, 615 S.E.2d at 125 (interpreting Georgia's version of Revised UCC §§ 9-303 and 9-316, and stating that "once it becomes clear that Georgia law governs because the goods are covered by a Georgia certificate of title, the next question is whether the security interest previously perfected in another state remains perfected.")

MEMORANDUM OF DECISION - 18

9316 of its Uniform Commercial Code control.

Those provisions of the California Uniform Commercial Code do not cause Defendant's security interest in the Mercury to become unperfected upon the vehicle becoming covered by the certificate of title in Idaho. Nor has Trustee cited any other statutory authority or case law establishing that Defendant's interest became unperfected under California law on July 16, 2008, or elsewhere between July 16, 2008 and the petition date of October 14, 2008.

Therefore, pursuant to California's Uniform Commercial Code §§ 9303 and 9316, and absent identified law to the contrary, the Court concludes that Defendant's security interest was still perfected when Debtors filed their chapter 7 bankruptcy petition on October 14, 2008. Because Defendant's interest in the Mercury was so perfected, Trustee did not meet his burden of proving that a transfer was made on July 16, 2008.[17]

## CONCLUSION

Based on the foregoing, there was no transfer that occurred on July 16, 2008 under § 547(e). In the absence of such transfer, Trustee's preference action fails.

//

//

---

[17] Thus, the other elements of § 547(b) need not be addressed.

MEMORANDUM OF DECISION - 19

Judgment will be entered for Defendant. Its counsel will provide an

appropriate form of judgment for entry by the Court.

DATED: July 15, 2009

*[signature]*

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 20